**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                    Plaintiff,

        v.

RAKUTEN, INC., and EBATES
PERFORMANCE MARKETING, INC.
DBA RAKUTEN REWARDS,

                 Defendants.

Civil Action No. 21-461-GBW

---

## MEMORANDUM ORDER

Pending before this Court is Defendants' Partial Motion to Dismiss Second Amended Complaint for Patent Infringement and Stay Patent Claims Pending Inter Partes Review Proceedings (D.I. 99), Plaintiff's Motion for Leave to File a Third Amended Complaint (D.I. 111), and Rakuten, Inc.'s Renewed Motion to Dismiss Second Amended Complaint for Patent Infringement Under Fed. R. Civ. P. 12(b)(2) (D.I. 132). The Court heard oral argument on the above pending motions on December 13, 2022. For the reasons below, Defendants' Partial Motion to Dismiss Second Amended Complaint for Patent Infringement and Stay Patent Claims Pending Inter Partes Review Proceedings (D.I. 99) is DENIED-IN-PART and GRANTED-IN-PART; Plaintiff's Motion for Leave to File a Third Amended Complaint (D.I. 111) is DENIED; and Rakuten, Inc.'s Renewed Motion to Dismiss Second Amended Complaint for Patent Infringement Under Fed. R. Civ. P. 12(b)(2) (D.I. 132) is DENIED.

## I.   BACKGROUND[1]

On March 29, 2021, Plaintiff International Business Machines Corporation ("IBM") filed its Complaint alleging Rakuten USA, Inc., Rakuten Commerce, LLC, Ebates Inc. d/b/a Rakuten ("Ebates Inc.") and Rakuten, Inc.[2] ("Rakuten Japan") infringe U.S. Patent Nos. 7,072,849 (the "'849 patent"), 7,631,346 (the "'346 patent"), 6,785,676 (the "'676 patent"), and 7,543,234 (the "'234 patent"). D.I. 1. On May 19, 2021, Rakuten USA, Inc., Rakuten Commerce, LLC, and Ebates Inc. filed its first Motion to Dismiss. D.I. 13. IBM did not respond to the Motion to Dismiss and instead, on June 23, 2021, IBM filed its First Amended Complaint in which it dropped Rakuten USA, Inc. and Rakuten Commerce, LLC and added Ebates Performance Marketing, Inc. dba Rakuten Rewards ("Ebates Performance Marketing"). D.I. 18. Rakuten Japan then filed a Motion to Dismiss the First Amended Complaint for lack of personal jurisdiction. D.I. 31. The Court denied Rakuten's Motion to Dismiss without prejudice "to renew upon completion of jurisdictional discovery." D.I. 63.

Ebates Performance Marketing also moved to dismiss Count Six of the First Amended Complaint, arguing that the '443 patent was invalid. D.I. 60. IBM then filed its Second Amended Complaint to cite to a previously served expert report in a co-pending litigation, which opines the '443 patent is inventive and unconventional. D.I. 70 ¶ 81. Rakuten filed a Partial Motion to Dismiss Count Five of IBM's Second Amended Complaint but eventually withdrew the motion. D.I. 82; D.I. 98.

On April 25, 2022, Ebates Performance Marketing moved to dismiss Counts One, Three, and Five of IBM's Second Amended Complaint as barred by collateral estoppel and moved to stay

---

[1] The Court writes for the benefit of the parties and assumes familiarity with the issues in this case.

[2] On April 1, 2021, Rakuten, Inc. changed its name to Rakuten Group, Inc. D.I. 33 ¶ 5.

proceedings with respect to the '346 and '234 patents in view of *inter partes* review ("IPR") proceedings (the "Motion to Dismiss and Stay"). D.I. 99. On July 15, 2022, Rakuten Japan joined Ebates Performance Marketing's Motion to Dismiss and Stay. D.I. 134. Briefing regarding the Motion to Dismiss and Stay is complete. *See* D.I. 100, D.I. 115, D.I. 126.

On May 23, 2022, IBM requested leave to file a Third Amended Complaint. D.I. 111. Letter briefing regarding IBM's motion for leave to file a Third Amended Complaint is complete. *See* D.I. 112, D.I. 114, D.I. 117.

On July 15, 2022, Rakuten Japan filed a Renewed Motion to Dismiss IBM's Second Amended Complaint for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2) (the "Motion to Dismiss for Lack of Personal Jurisdiction"). D.I. 132.[3] Briefing regarding Rakuten Japan's Motion to Dismiss for Lack of Personal Jurisdiction is complete. *See* D.I. 133, D.I. 150, D.I. 166.

## II.   LEGAL STANDARD

### a.   Personal Jurisdiction Under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires the Court to dismiss any case in which it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del. 2000). The determination of whether the court has personal jurisdiction over a party requires a two-part analysis. *E.I. DuPont de*

---

[3] Rakuten Japan noted the following in its Motion to Dismiss for Lack of Personal Jurisdiction: "On February 16, 2022, the Court granted IBM's Unopposed Motion for Leave to File a Second Amended Complaint. (D.I. 68). None of the changes between the [First Amended Complaint] [("]FAC[)"] and the Second Amended Complaint ("SAC") are directed at curing the jurisdictional deficiencies of the FAC. Accordingly, Rakuten Japan is terming this motion as a 'renewed' motion to dismiss even though it is the first time Rakuten Japan is filing a motion seeking to dismiss the SAC." D.I. 132.

*Nemours*, 197 F.R.D. at 119. First, the court must determine whether a defendant's actions fall within the scope of a state's long-arm statute. *Id.* Second, the court must determine whether the exercise of jurisdiction comports with the Due Process Clause of the Constitution. *Id.* "The Delaware long-arm statute, 10 Del. C. § 3104(c), is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Kabbaj v. Simpson*, 547 F. App'x 84, 86 n.6 (3d Cir. 2013) (citing *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986)); *see also Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010); *RMG Media, LLC v. iBoats, Inc.*, No. 20-290-RGA, 2021 WL 1227730, at *2 (D. Del. Mar. 31, 2021) (citing *AstraZeneca AB v. Mylan*, 72 F. Supp. 3d 549, 552 (D. Del. Nov. 5, 2014)). In other words, the general two-part analysis of personal jurisdiction—(1) whether a defendant's actions fall within the scope of a state's long-arm statute; and (2) whether the exercise of jurisdiction comports with the Due Process Clause of the Constitution—collapses into a single inquiry of whether a court's exercise of personal jurisdiction comports with Due Process. *See id.*

Constitutional due process is satisfied if "sufficient minimum contacts exist between the defendant and the forum state to satisfy traditional notions of fair play and substantial justice." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 641 (D. Del. 2008); *see also Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). "In undertaking this 'minimum contacts' analysis, the Supreme Court has focused on the nature and extent of 'the defendant's relationship to the forum State.'" *RMG Media*, 2021 WL 1227730, at *2 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S.Ct. 1773, 1779 (2017)). The purpose of this requirement is to ensure that "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being

haled into court there." *TriStrata Tech.*, 537 F. Supp. 2d at 641 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"The plaintiff bears the burden of establishing that the defendants are properly subject to the court's jurisdiction." *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017). If a plaintiff makes "factual allegations [that] suggest the possible existence of requisite contacts between the defendant and the forum state with 'reasonable particularity,'" the Court should order jurisdictional discovery. *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005); *see also Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3rd Cir. 1992). However, "[a]fter discovery has begun, the plaintiff must sustain [its] burden by establishing jurisdictional facts through sworn affidavits or other competent evidence." *Philips Electronics North America Corp. v. Contec Corp.*, No. 2-123-KAJ, 2004 WL 503602, at *3 (D. Del. Mar. 11, 2004) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)) (internal citations omitted).

### b. Motion to Dismiss Under Rule 12(b)(6)

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of

the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015) (citation omitted). "A motion to dismiss [under Rule 12(b)(6)] 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)).

### c. Collateral Estoppel

Collateral estoppel (i.e., issue preclusion) precludes parties from relitigating an issue that they previously had a full and fair opportunity to litigate. *See Montana v. United States*, 440 U.S. 147, 153 (1979). Regional circuit law governs the general procedural question of whether collateral estoppel applies. *See ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1274 (Fed. Cir. 2018). "However, for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (citation omitted).

Under Third Circuit law, collateral estoppel applies when "(1) the identical issue [was] previously adjudicated; (2) the issue [was] actually litigated; (3) the previous determination of the issue [was] necessary to the decision; and (4) the party being precluded from relitigating the issue

[was] fully represented in the prior action." *Stone v. Johnson*, 608 F. App'x 126, 127 (3d Cir. 2015); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006). "The Third Circuit also considers whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action, and whether the issue was determined by a final and valid judgment." *Sound View Innovations, LLC v. Walmart Inc.*, No. 19-660-CFC-CJB, 2019 WL 7067056, at *2 (D. Del. Dec. 23, 2019), *report and recommendation adopted*, No. 19-660-CFC-CJB, 2020 WL 136864 (D. Del. Jan. 13, 2020) (citing *Free Speech Coal, Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012); *Jean Alexander*, 458 F.3d at 249). "The party seeking to effectuate an estoppel has the burden of demonstrating the propriety of its application." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (citation omitted).

### d. Motion to Stay

A court has discretionary authority to grant a motion to stay. *See Dentsply Int'l Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990). Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-LPS, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021) (citing *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019)). Courts sometimes also consider a fourth factor—"whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court"—when deciding whether to stay a case pending a covered business method review ("CBM"). *Brit. Telecomms. PLC v. IAC/InterActiveCorp.*, 2019 WL 4740156, at *2 (D. Del. Sept. 27, 2019). "While the four-

7

factor test that Congress enacted for stays in CBM proceedings does not expressly extend to IPR cases, the policy considerations that apply in the two contexts are similar, and the Federal Circuit has held that the fourth factor set forth in the CBM statute may properly be applied to stays in IPR cases as well." *Id.* at *3 (citation omitted).

### e. Motion for Leave to Amend

Federal Rule of Civil Procedure 15 provides that, apart from amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The decision to grant or deny leave to amend lies within the discretion of the court." *Compagnie des Grands Hotels d'Afrique SA v. Starwood Cap. Grp. Glob. I LLC*, No. 18-654-SB-SRF, 2021 WL 6883231, at *4 (D. Del. Feb. 10, 2021) (citations omitted).

"Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 486–87 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182. An amendment is futile if it "would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). "The standard for assessing futility is the 'same standard for legal sufficiency as applies under [Federal] Rule [of Civil Procedure] Rule 12(b)(6).'" *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

## III.   DISCUSSION

### a.   Personal Jurisdiction Under Rule 12(b)(2)

The parties dispute whether the Court has personal jurisdiction over Rakuten Japan.  For the reasons discussed below, the Court finds personal jurisdiction over Rakuten Japan is proper and denies Rakuten Japan's Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 132).  The Court agrees with IBM's assertion that Rakuten Japan "targeted" this District by assigning three patents to Ebates Performance Marketing and having Ebates Performance Marketing file permissive patent infringement counterclaims in this District.

The Court will first provide a history of how Ebates Performance Marketing acquired the counterclaim patents asserted in this action.  Rakuten Japan is a Japanese corporation, with its principal place of business in Setagaya, Tokyo, Japan.  D.I. 70 ¶ 16.  Rakuten Japan is "the ultimate parent company to Ebates Performance Marketing[.]"  *Id.*  In July 2015, IBM informed Rakuten Japan that its entities were infringing certain IBM patents and asked Rakuten Japan if it would be willing to enter into a licensing agreement.  *See* D.I. 70 ¶¶ 8, 126.  Rakuten Japan declined.  *Id.* From November 2016 to December 2020, Rakuten Japan acquired the '861, '968, and '960 patents from various companies.  D.I. 150 at 11 (citing D.I. 151-5, Ex. 33; D.I. 151-6, Exs. 34-35, 38-40). On March 29, 2021, IBM brought suit against Rakuten Japan and other Rakuten entities.  D.I. 1. On September 3, 2021, Rakuten Japan assigned the '861, '968, and '960 patents to Ebates Performance Marketing.  D.I. 150 at 12 (citing D.I. 151-5, Ex. 30 at 1).  Four days later, on September 7, 2021, Ebates Performance Marketing brought permissive patent infringement counterclaims against IBM on those three patents in this District.  D.I. 150 at 12 (citing D.I. 26).

The timing of Rakuten Japan's transfer of the '861, '968, and '960 patents to Ebates Performance Marketing and the lack of any alternative explanation for the transfer of these patents

permits the Court to make a reasonable inference that Rakuten Japan intentionally assigned the counterclaim patents to Ebates Performance Marketing with the intent that Ebates Performance Marketing would assert those patents against IBM in this action. In other words, Rakuten Japan used Ebates Performance Marketing to assert permissive counterclaims in this District and, thus, purposefully availed itself to this District.[4]

Under the Constitution, "'[s]pecific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities such that the defendant should reasonably anticipate being haled into court there.'" *Decker v. Dyson*, 165 F. App'x 951, 953 (3d Cir. 2006) (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products*, 75 F.3d 147, 151 (3d Cir. 1996)). "This has been interpreted to mean that the plaintiff must establish that the defendant has had 'minimum contacts' with the forum state and that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Decker*, 165 F. App'x at 953 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts can be defined as "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Toys "R"*

---

[4] In effect, Ebates Performance Marketing is acting as Rakuten Japan's agent. In Delaware, "a defendant company may be subject to personal jurisdiction in Delaware by virtue of the court's personal jurisdiction over the defendant company's affiliate" under the agency theory. *Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009). "'[T]he court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction.'" *Id.* (quoting *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998)). "This theory does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts." *Id.*; *see also Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470 (D. Del. 1991) (under the agency theory, "only the precise conduct shown to be instigated by the parent is attributed to the parent"). Rakuten Japan is subject to personal jurisdiction in Delaware because Ebates Performance Marketing appears to be acting on Rakuten Japan's behalf or at its direction when it asserted the permissive counterclaims in this action.

*Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Asahi Metal Indus. Co. v.*
*Superior Ct.*, 480 U.S. 102, 109 (1987)).

Here, Rakuten Japan has purposefully availed itself of the privilege of conducting activities
within the forum State (Delaware). Rakuten Japan acquired property—the '861, '968, and '960
patents—and assigned them to its subsidiary—Ebates Performance Marketing, which is a
Delaware corporation. D.I. 70 ¶ 17. Rakuten Japan intentionally assigned those patents to Ebates
Performance Marketing with the intent to assert those patents as permissive counterclaims. Lastly,
Rakuten Japan used Ebates Performance Marketing to assert those patents in this action in
Delaware. The Court finds Rakuten Japan's conduct sufficient to establish that it has minimum
contacts with this forum.

The Court also considered the following facts when deciding Rakuten Japan's Motion to
Dismiss for Lack of Personal Jurisdiction. Rakuten Japan was "involve[d]" in authenticating users
on the accused website. D.I. 150 at 7 (citing D.I. 151-1, Ex. 1 at 169:12-17 ("Q. Okay. And the
distinction that I'm understanding from this – and I want to see if we're on the same page – is that
before December 2021, there was involvement of rID [Rakuten ID] in authenticating users through
the legacy ID systems? A. Right. Involvement, yes.")).[5] Also, on www.rakuten.com's privacy
policy page, it states that "[a]s long as you do not connect to another Rakuten service, your
identifiers (username, email address, encrypted password, first name, last name and address) are
*shared only with our parent company, Rakuten Group, Inc. [Rakuten Japan], for the purposes of*
*operating our authentication service*." D.I. 46-1, Ex. 1 (emphasis added). Rakuten Japan also
made sales to customers in Delaware and shipped product there. D.I. 150 at 12 (citing D.I. 151-1,

---

[5] The "rID" system refers to Rakuten Japan's system, while the "legacy ID system" refers to Ebates
Performance Marketing's system. D.I. 150 at 7 n.4.

Ex. 1 at 89:11-90:1, 92:24-93:5, 94:16-24, 95:19-96:3; Ex. 2; Ex. 3); *see also* D.I. 133 at 9.

Rakuten Japan must approve Ebates Performance Marketing's line items that cost over 300 million

yen. D.I. 151-1, Ex. 10 at 64:24-65:5.   Lastly, there is evidence that Rakuten Japan licenses

contracts with other Delaware companies on behalf of Ebates Performance Marketing and there is

evidence that these license agreements relate to the accused instrumentalities in this case. *See* D.I.

151-1, Ex. 1 at 225:12-21, 226:2-227:9, Ex. 8, Ex. 9, Ex. 10 at 79:18-21.

Thus, the Court finds that it has personal jurisdiction over Rakuten Japan, and its finding

comports with fair play and substantial justice under the Due Process Clause.   For the reasons

stated above, Rakuten Japan's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

### b.  Motion to Dismiss

For the reasons discussed below, the Court finds collateral estoppel bars IBM's

infringement claims with respect to the '443 and '676 patents, but not with respect to the '849

patent.   Thus, the Court grants Defendants' Motion to Dismiss Counts Three and Five of IBM's

Second Amended Complaint and denies Defendants' Motion to Dismiss Count One of IBM's

Second Amended Complaint (D.I. 99).

### i.  The '443 Patent

Defendants argue collateral estoppel bars IBM's infringement claims with respect to the

'443 and '676 patents.   D.I. 100 at 1-3, 13-16.   Defendants argue that the asserted claims of the

'443 and '676 patents are invalid under 35 U.S.C. § 101.   D.I. 100 at 13.   Defendants point out that

the identical issues of invalidity were previously litigated and, thus, collateral estoppel bars IBMs

infringement claims for the '443 and the '676 patents.   *Id.*; s*ee Int'l Bus. Machines Corp. v. Zillow

Grp., Inc.*, No. 2-20-1130-TSZ, 2022 WL 704137, at *13 (W.D. Wash. Mar. 9, 2022) (the "Zillow

Order"); *Chewy, Inc. v. Int'l Bus. Machines Corp.*, No. 21-CV-1319 (JSR), 2022 WL 1078213, at *17 (S.D.N.Y. Apr. 11, 2022) (the "Chewy Order").

On April 11, 2022, Judge Rakoff of the United States District Court for the Southern District of New York held claims 13 and 15-17 of the '443 patent are invalid under 35 U.S.C. § 101. Chewy Order at *17. Judgment has been entered in favor of Chewy, Inc. with respect to the '443 patent. *Chewy, Inc. v. Int'l Bus. Machines Corp.*, No. 21-1319 (JSR), D.I. 184 at 1 (S.D.N.Y. Apr. 12, 2022). On March 9, 2022, Judge Zilly of the United States District Court for the Western District of Washington held that all claims of the '676 patent are invalid under 35 U.S.C. § 101. Zillow Order at *13. Judgment has been entered in favor of Zillow with respect to the '646 patent. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2-20-1130-TSZ, D.I. 69 at 1-2 (Apr. 15, 2022). Both the Zillow and Chewy cases are on appeal and pending before the Federal Circuit. *See Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 22-1861 (Fed. Cir.); *Chewy, Inc. v. Int'l Business Machines Corp.*, No. 2022-1756 (Fed. Cir.).

## 1. Whether the previous determination was necessary to the decision

The parties do not appear to dispute this element of collateral estoppel. *See* D.I. 100 at 16, D.I. 115 at 15-17, D.I. 126 at 2-3. For example, Judge Rakoff's determination that the '443 patent was invalid under § 101 was necessary to his decision to grant Chewy's motion for summary judgment. Chewy Order at *17 ("Thus, the Court finds that the asserted claims of the '443 patent are invalid under 35 U.S.C. § 101. Accordingly, the Court grants Chewy's motion for summary judgment of invalidity with regard to the '443 patent."). Likewise, Judge Zilly's determination that the '676 patent was invalid under § 101 was necessary to his decision to grant Zillow's motion to dismiss. Zillow Order at *13 ("The '676 Patent is not valid under 35 U.S.C. § 101, and IBM's second count of patent infringement, [] is DISMISSED as failing to state a claim upon which relief

can be granted."). Thus, the Court finds Defendants have shown the first element of collateral estoppel.

## 2. Whether the identical issue was previously litigated

In this action, Defendants argue that the asserted claims of the '443 and '676 patents are invalid under 35 U.S.C. § 101. D.I. 100 at 13. In the Chewy case, Judge Rakoff found that claims 13 and 15 through 17 of the '443 patent were "invalid under 35 U.S.C. § 101." Chewy Order at *17; *see also id.* at *15-16. In this action, IBM alleges that Defendants infringe claims 1 through 20 of the '443 patent. D.I. 70 ¶ 267. Although the patent claims at issue in the Chewy case are not identical to the asserted claims in this action, "[i]t is well established that patent claims need not be identical for collateral estoppel to apply." *Google LLC v. Hammond Dev. Int'l, Inc.*, 2022 WL 17491972, at *3 (Fed. Cir. 2022) (citing *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015)).[6] "Rather, collateral estoppel requires that the *issues of patentability* be identical." *Id.* (citing *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). "If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Ohio Willow Wood*, 735 F.3d at 1342.

Here, the Court finds that the difference between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity. Judge Rakoff's determination that claims 13 and 15 through 17 of the '443 patent were invalid under § 101 equally applies to the other claims in the patent. In IBM's Second Amended Complaint, it alleges several inventive concepts of the '443 patent. D.I. 70 ¶¶ 68-82. For example, IBM alleges the '443 patent uses "a computer-specific technique of 'batch processing'" "to improve the delivery of

---

[6] IBM does not provide any substantive arguments regarding this point. *See generally* D.I. 115.

advertisements over the internet," "a computer-specific technique of caching," the use of an identifier for a user, and the use of a "repository" to store information used in associating search results with advertisements. *Id.* However, the inventive concepts cited in IBM's Second Amended Complaint were aspects of the invention that were recited in the claims that were held invalid by Judge Rakoff in the Chewy case. *See* Chewy Order at *15-17. For example, Judge Rakoff found the use of a "repository" in the claims did not recite an inventive concept. Chewy Order at *16 ("But using a repository – which the specification defines as 'a server or wide area network,' Patent '443 at 6:27-29 – to store the information used in associating search results with advertisements is not an inventive concept. Rather, it merely encapsulates the conventional concept of storing advertisement in a means compatible with the patent's abstract advertisement targeting approach." (citation omitted)).  Thus, collateral estoppel applies to the remaining claims in the '443 patent. *See Ohio Willow Wood*, 735 F.3d at 1342.

IBM asserts that Defendants infringe claim 14 of the '676 patent in its Second Amended Complaint. D.I. 70 ¶¶ 210, 212.  In the Zillow case, Judge Zilly specifically found that claim 14 of the '676 patent was "not valid under 35 U.S.C. § 101." Zillow Order at *13; *see also id.* at *10-12.  Thus, the identical issue of whether claim 14 of the '676 patent was invalid was previously adjudicated in the Zillow case.  For the above reasons, the Court finds that Defendants have shown the second element of collateral estoppel.

### 3. Whether the issue was actually decided on the merits and the decision was final and valid

The issue of whether the '443 and '676 patents are invalid under § 101 was decided on the merits and the decision was final and valid.  Both Judge Zilly and Judge Rakoff provide several pages of analysis regarding the issue of invalidity and judgment has been entered in favor of defendants based on Judge Zilly's and Judge Rakoff's resolution of the issue.  *See Chewy, Inc. v.*

*Int'l Bus. Machines Corp.*, No. 21-1319 (JSR), D.I. 184 at 1 (S.D.N.Y. Apr. 12, 2022); *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2-20-1130-TSZ, D.I. 69 at 1-2 (Apr. 15, 2022). Both cases are subject to pending appeals.

IBM argues that, because the Chewy and Zillow cases are subject to appeals, "'although not dispositive on the question of finality, [] [it] weighs against the application of issue preclusion.'" D.I. 115 at 15 (quoting *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 326 (D. Del. 2021) (citing *Sound View*, 2019 WL 7067056, at *4)).

However, "the law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding." *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999) (citations omitted); *Galderma Lab'ys Inc. v. Amneal Pharms.*, LLC, 921 F. Supp. 2d 278, 281 (D. Del. 2012) (same); *Biogen Int'l GmbH v. Amneal Pharms. LLC*, 487 F. Supp. 3d 254, 267 (D. Del. 2020), *judgment entered*, No. 17-823-MN, 2020 WL 6277393 (D. Del. Sept. 22, 2020), *appeal dismissed*, No. 2021-1078, 2022 WL 16548075 (Fed. Cir. Oct. 31, 2022) ("[the] judgment is no less preclusive because it was rendered by a district court rather than the Federal Circuit and the judgment's preclusive effect is in no way diminished because it is presently on appeal or because this case – where preclusion is sought – has already proceeded through trial."); *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex. 2014) (Bryson, J. sitting by designation) ("the collateral estoppel effect of a prior district court decision is not affected by the fact that an appeal has been taken from the decision."); *Huron Holding Corporation v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941) ("[I]n the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality."). *But see Sound View*, 2019 WL 7067056, at *3 (finding a previous

decision by a different court finding the asserted patent invalid under § 101 is not "sufficiently firm to be accorded conclusive effect.") (citation omitted).

Thus, the fact that the Chewy and Zillow cases are subject to pending appeals has no effect on the finality or binding effect of the Chewy and Zillow district court's respective holdings. For all these reasons, Defendants have shown the third element of collateral estoppel.

### 4. Whether IBM was adequately represented in the previous action

The parties do not appear to dispute this element. *See* D.I. 100 at 16; D.I. 115 at 15-17. There is no doubt that IBM was fully and adequately represented in the prior actions. In both the Zillow and Chewy cases, IBM was represented by the same outside counsel as in this action—Desmarais LLP. D.I. 100 at 16. IBM, therefore, was adequately represented in the previous actions. Thus, the Court finds Defendants have shown the fourth element of collateral estoppel.

In response to Defendant's Motion to Dismiss Counts Three and Five of IBM's Second Amended Complaint as barred by collateral estoppel, IBM requests the Court to stay proceedings related to the '443 and '676 patents pending the resolution of IBM's appeals. D.I. 115 at 15-17. The Court will not stay proceedings related to the '443 and '676 patents. Defendants have established all of the requirements of collateral estoppel with respect to the '443 and '676 patents and a "judge cannot permit relitigation because of equitable considerations." *Mississippi Chem. Corp. v. Swift Agr. Chemicals Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983); *see also Biogen*, 487 F. Supp. 3d at 268 (expressing "doubts that [the district court] has discretion to decline to apply collateral estoppel for equitable reasons in a case like this when all the requirements are otherwise met.").

17

In sum, the Court finds collateral estoppel bars IBM's infringement claims with respect to the '443 and '676 patents.

### ii. The '849 Patent

For the reasons discussed below, the Court denies Defendants' Motion to Dismiss Count One of IBM's Second Amended Complaint as barred by collateral estoppel.

On April 12, 2022, Judge Rakoff granted Chewy's summary judgment motion that the Chewy accused products do not infringe claims 1-2, 14, and 18 of the '849 patent because the accused products did not meet the "selectively storing" limitation. Chewy Order at *7-9. Judge Rakoff construed the term "selectively storing" to require that the "advertising objects be 'pre-fetched' in the sense that they are retrieved before the user has requested the page in connection with which they are to appear." *Id.* at *8. Chewy's accused products delivered "user advertisements based on a set of targeting criteria specific to the user built from information collected about that user, such as his or her past history of interacting with the site or the user's demographics." *Id.* at *9. Thus, Judge Rakoff found Chewy's accused products did not meet the "selectively storing" limitation.

Defendants contend that now IBM "accuses Ebates Performance Marketing of allegedly practicing the 'selectively storing' limitation of asserted claim 1 [of the '849 patent] by setting cache control parameters that dictate which objects are stored and for how long." D.I. 100 at 14 (citing D.I. 70 ¶¶ 150, 152-53). Defendants argue that IBM is collaterally estopped from making this argument because this identical issue was previously litigated. D.I. 100 at 14; *see also* Chewy Order at *7-9. Defendants contend Judge Rakoff "held that retrieving and storing content from a page requested by the user (e.g., by setting cache control parameters that dictate when and for how long objects are stored) is insufficient to practice the limitation." D.I. 100 at 14 (citation omitted).

18

Thus, Defendants argue, because IBM's theory of infringement action was already rejected by Judge Rakoff in the Chewy case, IBM is collaterally estopped from arguing Ebates Performance Marketing infringes the '849 patent.  D.I. 100 at 15.

IBM responds that Defendants have failed to meet its burden that the accused products in this case are essentially the same as the Chewy accused products.  D.I. 115 at 9-10.  "A primary issue in a collateral estoppel analysis with respect to non-infringement is whether the accused product is the same." *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1273 (Fed. Cir. 2018).   Defensive collateral estoppel of non-infringement applies in the "limited circumstances[ ] where it is shown that a close identity exists between the relevant features of the accused device and the device previously determined to be [non-]infringing" such that they are "essentially the same." *Id.* at 1274 (citing *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1333 (Fed. Cir. 2008).  "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Id.* (citation omitted).  The proponent of issue preclusion "bears the burden of showing that the accused devices are essentially the same as those in the prior litigation." *Id.* (citing *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311 (Fed. Cir. 2011)).

Here, Defendants bear the burden of showing that the accused products in this case are "essentially the same" as the Chewy accused products and that the difference are merely "colorable" or "unrelated to the limitations" of the claims of the '849 patent. *Ak Steel Corp.*, 908 F. 3d at 1274.  As noted by IBM, Defendants are essentially "asking this Court to short circuit the typical infringement analysis at the very beginning of the case and conclusively decide that none of the Rakuten Accused Products infringe the '849 patent—even though no court has analyzed those products." D.I. 115 at 9.  The Court finds that Defendants have not met their burden.

19

First, Defendants and Chewy are unrelated companies. *See* D.I. 115 at 9. Second, Defendants' accused website—www.rakuten.com—looks and functions differently than Chewy's accused website—www.chewy.com. *Id.* Third, the products were developed independently and use different source code. *Id.* For example, Defendants' website and mobile application use the React library and Glide framework. D.I. 115 at 11 (citing D.I. 111-3 at 45, 54). Neither the React library nor the Glide framework were at issue in the Chewy case. *See generally* Chewy Order. The one similarity Defendants point out between the accused products in this case and Chewy's accused products is the use of cache control parameters. D.I. 100 at 14. However, Defendants did not explain how or why the cache control parameters used in the accused products in this case and Chewy's accused products are "essentially the same."

In response, Defendants cite to several cases in which courts found collateral estoppel applied to different accused products sharing the same relevant functionality. *See* D.I. 126 at 5-10. Defendants, however, never explained *how* the accused product in this case are "essentially the same." For example, Defendants argue:

> And, while IBM may argue that Ebates Performance Marketing's accused instrumentalities are not identical to Chewy's accused instrumentalities, the Federal Circuit and district courts have repeatedly applied collateral estoppel to infringement arguments so long as the accused devices in both cases share the same relevant functionality. *See, e.g., ArcelorMittal*, 908 F.3d at 1273 ("Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'"); *Yufa*, 629 F. App'x at 985- 87; *EON Corp*, 2015 WL 4914984, at *7-9 (N.D. Cal. Aug. 17, 2015); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA*, Inc., 617 F.3d 1296, 1307-08, 1311-12 (Fed. Cir. 2010); *Galderma*, 921 F. Supp. 2d at 281-82.

> Accordingly, the identical issues regarding the '676, '443, and '849 patents were previously adjudicated.

D.I. 100 at 15.

As evidenced above, Defendants merely provide conclusionary statements that the accused products in this case are "essentially the same" as the Chewy accused products. *See id*; *see also* D.I. 126. Defendants failed to provide any specifics or analysis to show how the products are essentially the same.[7] For the reasons stated above, the Court denies Defendants' Motion to Dismiss Count One of IBM's Second Amended Complaint.

### c. Motion for Leave to Amend

IBM requests the Court grants its leave to file a Third Amended Complaint. D.I. 111; *see also* D.I. 112, 117. According to IBM, the Third Amended Complaint "does not expand the scope of the litigation, but instead incorporates IBM's timely served Initial Infringement Contentions and succinctly provides important context for those contentions, which IBM believes will moot Rakuten's Third Partial Motion to Dismiss." D.I. 112 at 1. IBM does not propose to amend any of its allegations regarding the '676 and '443 patents. *See, e.g.*, D.I. 111-7 ¶¶ 66-74, 82-101. The majority of IBM's proposed amendments relate to the '849 patent. *See* D.I. 111-7 ¶¶ 149, 151, 178-96. IBM explains that its Third Amended Complaint "demonstrates that (1) the accused products are not the same as in prior cases [], (2) IBM is asserting claims that Rakuten did not address in its motion to dismiss [], and (3) the Chewy summary judgment decision was inconsistent

---

[7] At oral argument, Defendants' counsel made new arguments regarding why the Chewy accused products were essentially the same as the accused products in this case. As these arguments were not made in Defendants' briefing, it is waived. *See Horatio Washington Depot Techs. LLC v. TOLMAR, Inc.*, No. 17-1086-LPS, 2018 WL 5669168, at *7 (D. Del. Nov. 1, 2018), *report and recommendation adopted*, No. 17-1086-LPS-CJB, 2019 WL 1276028 (D. Del. Mar. 20, 2019) (citing *Johnson-Braswell v. Cape Henlopen Sch. Dist.*, No. 14-1089-RGA, 2015 WL 5724365, at *12 n.9 (D. Del. Sept. 29, 2015); *L-3 Commc'ns Corp. v. Sony Corp.*, No. 10-734-RGA, 2014 WL 4674815, at *3 (D. Del. Sept. 12, 2014) (noting that an argument raised for the first time during oral argument is waived)).

with prior decisions in this District []." D.I. 117 at 2 (citations omitted). For the reasons discussed below, the Court denies IBM's request for leave to file a Third Amended Complaint.

As discussed above, the Court finds IBM is collaterally estopped from asserting the '443 and '676 patents. IBM's proposed Third Amended Complaint would be futile because IBM continues to assert infringement of two patents—the '443 and '676 patents—that have already been held invalid by other district courts. *See* D.I. 111-1 ¶¶ 14, 226-53, 283-323; *see also* D.I. 114 at 3-5. Under Rule 15(a)(2), the "Court must deny leave to amend if such an amendment would be futile." *Wilson v. Taylor*, 466 F. Supp. 2d 567, 575 (D. Del. 2006) (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Thus, IBM's request for leave to file its Third Amended Complaint (D.I. 111) is denied.

### d. Motion to Stay

Defendants also move to stay litigation relating to the '234 and '346 patents pending their respective IPR proceedings at the PTAB. D.I. 100 at 16-19. IBM opposes the motion. D.I. 115 at 17-20. The PTAB instituted IPRs for both patents. *See Ebates Performance Marketing, Inc. d/b/a/ Rakuten Rewards v. International Business Machines Corp.*, No. IPR2022-00646, Paper 10 (Oct. 25, 2022); *Ebates Performance Marketing, Inc. d/b/a/ Rakuten Rewards v. International Business Machines Corp.*, No. IPR2022-00133, Paper No. 9 (June 1, 2022). On balance, the Court finds the stay factors weigh in favor of entering a stay pending the issuance of final written decisions in the IPR proceedings related to the '234 and '346 patents.

The first factor—whether granting the stay will simplify the issues for trial—is neutral. If the PTAB invalidates the '234 and '346 patents, then the patents would be removed from the case. *See* D.I. 100 at 17. If the patents survive, simplification will result because estoppel would limit the prior art available to Rakuten during the remainder of discovery and trial. *See id.* IBM notes,

however, that if the '234 and '346 patents are stayed, IBM's '849 patent would nevertheless progress, and Defendants asserted counterclaims of infringement in this case would also progress. D.I. 115 at 18.  Both parties make valid arguments and, thus, the first factor is neutral.

The second factor—the stage of the litigation—weighs in favor of a stay because "the most burdensome stages of the cases—completing fact discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019). In this case, fact discovery is ongoing, expert discovery has not yet begun, and the *Markman* hearing has not occurred. "[T]he bulk of the expenses that the parties would incur . . . is still in the future." *Id.* (internal citations omitted).

The third factor—whether a stay would cause non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage—similarly weighs in favor of a stay.  The parties are not direct competitors. D.I. 100 at 19; D.I. 115 at 20.  Thus, IBM "will not suffer any loss of market share or erosion of goodwill due to a stay." *IOENGINE*, 2019 WL 3943058, at *6.

Finally, the fourth factor—whether a stay will reduce the burden of litigation—weighs in favor of a stay for the reasons discussed above in the context of the second factor.

Thus, the Court grants Defendants' Motion to Stay Proceedings for the '234 and '346 patents (D.I. 99).

## IV.    CONCLUSION

Therefore, at Wilmington this 22nd day of December 2022, **IT IS HEREBY ORDERED** that:

1. Defendants' Partial Motion to Dismiss Second Amended Complaint for Patent Infringement and Stay Patent Claims Pending Inter Partes Review Proceedings (D.I. 99) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court grants Defendants' Motion to Dismiss Counts Three and Five of Plaintiff's Second Amended Complaint and denies Defendants' Motion to Dismiss Count One of Plaintiff's Second Amended Complaint. The litigation is stayed with respect to the '234 and '346 patents pending the issuance of final written decisions in the IPR proceedings. Within 30 days of the resolution of the IPR proceedings, the parties shall notify the Court of the outcome of the IPR proceedings and the implications of the outcome on this case and file a motion or proposed stipulation to lift or continue the current stay regarding the '234 and '346 patents.

2. Plaintiff's Motion for Leave to File a Third Amended Complaint (D.I. 111) is **DENIED**.

3. Rakuten, Inc.'s Renewed Motion to Dismiss Second Amended Complaint for Patent Infringement Under Fed. R. Civ. P. 12(b)(2) (D.I. 132) is **DENIED.**

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE