## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Plaintiff/Counterclaim-Defendant, | |
| v. | C.A. No. 21-461-GBW |
| RAKUTEN, INC., and EBATES PERFORMANCE MARKETING, INC. DBA RAKUTEN REWARDS, | |
| Defendants/Counterclaim-Plaintiffs. | |

## <u>MEMORANDUM ORDER</u>

Pending before the Court are Plaintiff/Counterclaim-Defendant International Business Machines Corporation's ("IBM" or "Plaintiff") Motion to Stay (D.I. 250), Defendants/ Counterclaim-Plaintiffs Ebates Performance Marketing, Inc. dba Rakuten Rewards and Rakuten, Inc. ("Rakuten" or "Defendants") Cross-Motion to Stay All Claims (D.I. 263), and IBM's Motion for Judgment on the Pleadings (D.I. 217). The Court has reviewed the parties' briefing and accompanying declarations and exhibits. D.I. 218; D.I. 231; D.I. 236; D.I. 251; D.I. 264; D.I. 275; D.I. 277; D.I. 288; D.I. 314; D.I. 315; D.I. 375; D.I. 376. For the reasons stated below, the Court GRANTS IBM's Motion to Stay (D.I. 250), DENIES Rakuten's Cross-Motion to Stay All Claims (D.I. 263), and DENIES-IN-PART and DENIES-IN-PART WITHOUT PREJUDICE IBM's Motion for Judgment on the Pleadings (D.I. 217).

## I.  LEGAL STANDARDS

### A. Motion to Stay

A court has discretionary authority to grant a motion to stay. *See Dentsply Int'l Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990). Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, C.A. No. 15-1168-LPS, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021) (citing *Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019)). Courts sometimes also consider a fourth factor—"whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court"—when deciding whether to stay a case pending a covered business method review ("CBM"). *Brit. Telecomms. PLC v. IAC/InterActiveCorp.*, C.A. No. 18-366-WCB, 2019 WL 4740156, at *2 (D. Del. Sept. 27, 2019). "While the four-factor test that Congress enacted for stays in CBM proceedings does not expressly extend to [*inter partes* review ("IPR")] cases, the policy considerations that apply in the two contexts are similar, and the Federal Circuit has held that the fourth factor set forth in the CBM statute may properly be applied to stays in IPR cases as well." *Id.* at *3 (citations omitted).

### B. Judgment on the Pleadings

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." FED. R. CIV. P. 12(c). When evaluating a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light

most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp.2d 612, 617 (D. Del. 2008) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420. Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

### C.  35 U.S.C. § 101

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 inquiries "may be, and frequently [have] been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that there are exceptions to § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted). "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into

something more[] thereby 'transforming' them into a patent-eligible invention. The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 217 (cleaned up).

The Supreme Court's *Alice* decision established a two-step framework for determining patent-eligibility under § 101. In the first step, the court must determine whether the claims at issue are directed to a patent ineligible concept. *Id.* In other words, are the claims directed to a law of nature, natural phenomenon, or abstract idea? *Id.* If the answer to that question is "no," then the patent is not invalid for teaching ineligible subject matter under § 101. If the answer to that question is "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which underlies the second step of *Alice*, "is a question of fact. Any

fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## II.   DISCUSSION

### A.  IBM's Motion to Stay (D.I. 250) and Rakuten's Cross-Motion to Stay All Claims (D.I. 263)

IBM seeks to stay two of Rakuten's counterclaim patents: U.S. Patent Nos. 7,962,960 (the "'960 patent") and 8,072,968 (the "'968 patent"). D.I. 275.[1]  The Patent Office instituted IPRs for the '960 and '968 patents. *See* D.I. 221, Ex. 1; D.I. 252-1, Ex. 2. Rakuten opposes IBM's motion to stay and responded with a cross-motion to stay IBM's claim of infringement of U.S. Patent No. 7,072,849 (the "'849 patent") pending the appeal in *Chewy, Inc. v. IBM*, Case No. 22-1756 (Fed. Cir. 2022).  D.I. 263.

On balance, the stay factors weigh in favor of staying this litigation with respect to the '960 and '968 patents.  On December 22, 2022, the Court granted Rakuten's Motion to Stay Proceedings for U.S. Patent No. 7,543,234 (the "'234 patent") and 7,631,346 (the "'346 patent") pending the issuance of final written decisions in the IPR proceedings.  D.I. 230 at 22-23.  For similar reasons, the Court will stay this litigation with respect to the '960 and '968 patents pending the issuance of final written decisions in the IPR proceedings.[2]

---

[1] In its Reply Brief, IBM withdrew its motion to stay with respect to U.S. Patent No. 6,697,861 (the "'861 patent"), because "the Patent Office terminated the reexamination of Rakuten's '861 patent." D.I. 275 at 1 (citing D.I. 276-1, Ex. 1).

[2] "[I]t has become fairly routine to stay cases after IPRs have been instituted." *Wilson Wolf Mfr. Co. v. Brammer Bio, LLC*, C.A. No. 19-2315-RGA, 2020 WL 13119694, at *2 n.7 (D. Del. Dec. 8, 2020).

The Court also denies Rakuten's cross-motion to stay all claims in this litigation. D.I. 263. There are no Patent Office challenges against either the '849 or '861 patents. Rakuten has failed to persuade the Court that all claims in this case should be stayed. *See generally* D.I. 264.

On balance, the stay factors do not favor staying this litigation with respect to the '849 and '861 patents. Accordingly, the parties shall proceed with litigation on IBM's '849 patent and Rakuten's '861 patent.

### B. IBM's Motion for Judgment on the Pleadings

IBM also argues that the '960, '861, and '968 patents are not patentable under 35 U.S.C. § 101. D.I. 218. In light of the Court granting IBM's Motion to Stay (D.I. 250), IBM's Motion for Judgment on the Pleadings with respect to the '960 and '968 patents are denied without prejudice to renew upon the lifting of the stay. For the reasons stated below, the Court denies IBM's Motion for Judgment on the Pleadings with respect to the '861 patent.[3]

The '861 patent is entitled "Web Based Extranet Architecture Providing Applications to Non-Related Subscribers." The Abstract describes the invention as follows:

> An extranet that includes a network which couples a plurality of non-related participants and a server coupled to the network. The server stores a plurality of applications including workgroup applicants, transaction applications, security applications and transport circuits and equipment. The server is programmed to load particular ones of the plurality of applications onto the network for use by the plurality of participants in response to a request by one of the participants for a particular application.

'861 patent, Abstract.

IBM contends claim 10 of the '861 patent is representative. D.I. 218 at 3-4. Rakuten disagrees. D.I. 231 at 14-16. Claim 10 recites:

---

[3] On June 26, 2023, IBM filed a Notice of Subsequent Developments to notify the Court that Rakuten's final election of asserted claims for the '861 patent are claims 1, 7, 10, 11, and 13. D.I. 375 at 2.

10. An extranet method comprising:

accessing subscriber subscription information of a subscriber database listing extranet subscribers who subscribe to an extranet service;

storing at a common location accessible to the extranet subscribers software applications including at least one of

collaboration software applications,

workflow software applications,

transaction software applications,

electronic mail software applications, and

electronic data interchange software application;

communicating over a communication link with extranet subscribers;

sharing the stored software applications among the extranet subscribers in accordance with the subscriber subscription information;

associating a plurality of extranet subscribers as a workgroup of subscribers;

making the software applications available to subscribers of the workgroup; and

securing communication and data exchanged among the workgroup of subscribers.

On June 1, 2023, the Court construed several disputed claim terms in claim 10 of the '861

patent (D.I. 356) as follows:

| Term | Court's Construction |
|------|----------------------|
| extranet | extranets are private internets that allow communications and application sharing between designated, non-related organizations. Extranets are generally closed networks that allow communication between designated parties |

| Term | Court's Construction |
|------|---------------------|
| extranet subscribers | plain and ordinary meaning |
| workflow software application(s) | plain and ordinary meaning, i.e., an application for managing workflows |
| transaction software application(s) | plain and ordinary meaning, i.e., an application for entering or sending transactions |

On the representativeness issue, the Court agrees with IBM that, for the purposes of this motion, claim 10 of the '861 patent can be treated as representative of claims 1, 7, 11, and 13.

The Court next must turn to *Alice* step one. IBM argues that the asserted claims of the '861 patent are directed to the abstract idea of "storing and controlling access to resources." D.I. 218 at 11-13; D.I. 236 at 6-7. IBM explains that "apart from a conventional extranet, the claims are silent on the supposed unique and innovative technical network architecture." D.I. 218 at 11 (internal quotation marks omitted). IBM also argues that the asserted claims are directed to "[c]ontrolling access to resources," which is "a hallmark abstract idea." *Id.* at 12. Finally, IBM contends that the claim term "extranet" does not save the asserted claims because "limiting an abstract idea to the 'internet' does not make the claims any less abstract." *Id.* at 13.

Rakuten responds that the asserted claims of the '861 patent are not directed to an abstract idea. D.I. 231 at 16-17. Rakuten argues that the asserted claims "provide technical improvements over the prior art ways of providing a large variety of applications over a network through which groups of extranet subscribers can securely communicate, collaborate, and work together." *Id.*

IBM has not shown that the asserted claims of the '861 patent are directed to an abstract idea. The '861 patent seeks to provide an extranet architecture that is capable of sharing a wide

diversity of applications to be shared by different subscribers via a secure communication and data

exchange.  The specification states:

> The present invention allows non-related entities to collaborate with one another in
> a simple, flexible manner without requiring any particular subscriber to maintain
> the integrity or currentness of the extranet. For example, company A may be
> working with non-related company B on the production of a part and require a
> logical project extranet 82 to be created between them. By using the extranet
> according to the present invention, companies A and B may securely exchange e-
> mail, participants in discussion for a collaboratively work on documentation, spread
> sheets, workflow schedules, etc. Importantly, the communications and data
> exchanged between companies A and B are secured from access by other
> subscribers on the extranet. Thus subscribers can flexibly add or delete subscribers
> on the extranet according to their needs. In addition, each subscriber has access to
> a large number of applications without having to maintain such applications. Thus,
> a communication link is established between the subscribers listed in a subscriber
> database by establishing appropriate routing tables within an established security
> policy.

'861 patent at 5:30-49.

The Court disagrees with IBM that the asserted claims are analogous to the asserted claims

in *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd*, 955 F.3d 1317 (Fed. Cir. 2020), *cert. denied*,

141 S. Ct. 2624 (2021) and *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir.

2017).  D.I. 218 at 12-14; D.I. 315.  In *Ericsson*, the patent at issue claimed "a method and system

for limiting and controlling access to resources in a telecommunications system."  955 F.3d at

1320.  The Federal Circuit held the asserted claims were "directed to the abstract idea of controlling

access to, or limiting permission to, resources."  *Id.* at 1326.  The Federal Circuit reasoned

"[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human

mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Id.*

at 1327 (citation omitted).  In *Prism*, the Federal Circuit held claims directed to "(1) receiving

identity data from a device with a request for access to resources; (2) confirming the authenticity

of the identity data associated with that device; (3) determining whether the device identified is

authorized to access the resources requested; and (4) if authorized, permitting access to the

requested resources" were directed to the abstract idea of "providing restricted access to resources." 696 F. App'x at 1017. The Federal Circuit also reasoned that the asserted claims did not "cover a concrete, specific solution to a real-world problem." *Id.* In contrast, the asserted claims of the '861 patent do not merely store and control access to resources, as IBM contends. Instead, the asserted claims are directed to improvements to computer and network functionality. The asserted claims "solve[] the problems of the prior art by creating an extranet architecture capable of sharing a large variety of applications with different subscribers, while also allowing secure communication and data exchange amongst the subscribers." D.I. 314. Thus, the asserted claims are directed to a concrete, specific solution to a real-world problem.

The Court agrees with Rakuten that the asserted claims are closely analogous to those found in *Core Wireless Licensing SARL v. LG Elecs. Inc.*, 880 F. 3d 1356 (Fed. Cir. 2018). In *Core Wireless*, the Federal Circuit held the asserted claims were "directed to an improved user interface for computing devices, not to the abstract idea of an index." 880 F. 3d at 1362. The Court reasoned that the asserted claims "recite[d] a specific improvement over prior systems, resulting in an improved user interface for electronic devices," and thus were directed to "an improvement in the functioning of computers." *Id.* at 1362-63. The asserted claims of the '861 patent similarly recite a unique solution for sharing applications over a computer network. The asserted claims "provide an extranet architecture coupled to a wide diversity of applications that may be shared by non-related organizations while eliminating the need for any one organization to maintain the available applications." '861 patent at 2:14-18; *see also* claim 10. The asserted claims also describe an extranet architecture "that provides an appropriate degree of security and privacy" and "that is flexible and can be easily modified and updated." *Id.* at 2:18-22; *see also* claim 10.

Because the Court finds that representative claim 10 of the '861 patent is not directed to an abstract idea at *Alice* step one, the Court does not need to consider whether claim 10 recites an inventive concept at *Alice* step two. *See CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020). Thus, claims 1, 7, 10, 11, and 13 of the '861 patent are patent eligible under § 101.

## III.   CONCLUSION

For the foregoing reasons, the Court grants IBM's motion to stay, denies Rakuten's cross-motion to stay, and denies-in-part and denies-in-part without prejudice IBM's motion for judgment on the pleadings.

\*\*\*

11

WHEREFORE, at Wilmington this 5th day of July, 2023, **IT IS HEREBY ORDERED** that:

1. IBM's Motion to Stay (D.I. 250) is **GRANTED** and Rakuten's Cross-Motion to Stay All Claims (D.I. 263) is **DENIED**. The litigation is stayed with respect to the '960 and '968 patents pending the issuance of final written decisions in the IPR proceedings. Within 30 days of the resolution of the IPR proceedings, the parties shall notify the Court of the outcome of the IPR proceedings and the implications of the outcome on this case and file a motion or proposed stipulation to lift or continue the current stay regarding the '960 and '968 patents.

2. IBM's Motion for Judgment on the Pleadings (D.I. 217) is **DENIED** with respect to the '861 patent and **DENIED WITHOUT PREJUDICE** to renew upon the lifting of the stay with respect to the '960 and '968 patents.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE